We'll next hear from Council in United States v. Deluca. This is 20-8075. And you gentlemen will wait just one moment. Okay, thank you. This is US v. Deluca 20-8075. And we'll hear from Mr. Smith. Good morning. May it please the court. I'm Grant Smith with the Federal Public Defenders and I represent Michael Deluca. As to the initial stop, the government is not defending the district court's holding in this case. Instead, the government advances two alternative arguments, neither of which justify affirmance. The government's first argument is that there was reasonable suspicion that Mr. Deluca's car wasn't registered. This is wholly undermined by the transcript. Officer Freeman testified that before the stop began, he was able to see the temporary permit in the rear window of Mr. Deluca's Cadillac. But there's no reason to believe that this temporary permit was invalid and that because of the proper display of the temporary permit, the car was in fact registered. It can't be said that there's reason to suspect that the car wasn't registered when the facts known to Officer Freeman were that the car was in fact registered. Mr. Smith, let me ask you a question because it seems to me that there is actually two issues at least pertaining to Wyoming and probably Pennsylvania law. Assuming that the temporary tag would qualify as adequate registration, the statute in Wyoming 314101 also prohibits operating a vehicle in any manner with an expired or improper registration permit decal. Or any other department approved registration. So if he if there was nothing, if the officer was just wrong in a Wyoming or Pennsylvania law, that there's nothing wrong with having a temporary tag in a in a in a license plate. It seems to me that he that there was at least reasonable suspicion to stop him based on this statute under Wyoming law, which would have prohibited him from using a an expired tag, even if the temporary tag was perfectly kosher. What's wrong with that? Well, there's no reason to suspect as to the first prong that it was an expired license plate. There's no evidence as to that whether the decals on it had lapsed in some way. That's not in the record. So the question is whether it's an improper registration. And when the Wyoming legislature uses the word registration, they mean the certificate of registration, what the officer asked for when they come up to your window and say insurance and registration or license registration, you don't hand them a license. So this statute just doesn't cover license. I mean in the subsections before it talks about valid license plates and permits. This is talking about your certificate of registration. And there's nothing in the facts that would create reasonable suspicion that he was carrying a improper certificate of registration in his vehicle. And also, I think in this statute, if you're looking at what's improper, you just cross reference 32 to 201, the subsection that deals with registration requirements in Wyoming and the display of a license plate, whether it's an out of state plate doesn't return. It just isn't a violation of any of the registration requirements. Well, it does include permits and decals. And if you look at the registration requirements, Wyoming as a whole, the decals is referring to the decals you get for like an off-road vehicle. You don't have a certificate of registration for those on your ATV or your four-wheeler. You get a little decal that you put on that. So that's what it's referring to. That's your proof of registration for an off-road vehicle is a decal. So it's saying you can't have an expired decal on your ATV. You can't have an expired temporary permit, which he didn't have. And you can't have an expired or improper registration, meaning the certificate of registration. And there's nothing that suggests that he was carrying an invalid certificate of registration. And so accepting that, let's accept that you're correct on your interpretation of the law. We still have the problem of whether it would be objectively reasonable for an officer looking at a tag, a temporary tag in a window. Which I think the evidence of that was that he couldn't tell just by looking at it from his car that it was valid. Hold on a minute. Let me finish and then you can correct me if I'm wrong. And then a plate that returns to nobody. Okay, so my screen went out there. Sorry about that. So we have a temporary tag in a plate that returns to nobody. I mean, could an objectively reasonable officer, despite what your interpretation of the law is, and I'll give you for purposes of this argument that it's correct, think that there was reasonable suspicion that he was displaying those tags unlawfully? The answer, in short, is no. There's no reason to suspect he was displaying those unlawfully. But to answer in two parts. First, just to clarify, the government makes a misrepresentation in its response brief. The evidence wasn't that the officer couldn't see the numbering or the expiration date on the temporary tag. What the district court actually found, and what he wrote in his police report, was that he couldn't see the state of origination when he pulled Mr. Deluca over. And the state of origination doesn't seem to have any legal consequence. What he was able to see was that it was a valid temporary permit before he pulled him over. If he can't tell the state of origination, and the other tag comes back as belonging to nobody, couldn't that give him reason to believe that it was a false temporary tag or some registration violation was being committed? I don't think so. And if it was, that would be the burden of the government to show that there was some legal consequence to the state of origination. I mean, what the officer Freeman testified is really all he cares about is the registration number, the identification number that's on the temporary permit, and the expiration date. Those are the only two things that matter to determine whether it's valid or not. So for all he knows, it's validly registered. So then the question becomes, well, what suspicion would be created by having a plate that doesn't return? And if you look to the law, it's not suspicious of any criminal conduct. The government hasn't pointed to any statutory citation that could be violated by having a plate that doesn't return. And without that proof or that reference to the law, the government hasn't carried this burden in this case of showing that there was reason to suspect any criminal activity. What about 75 Pennsylvania Statute 1372? So when the officer stops the vehicle, sees that the temporary tag is from Pennsylvania, and to engage in what I think all of us would agree is a legally required myth that the state that the officer then pulls up with 70 that the Pennsylvania statutes, he would see the statute allows a registration card or plate or permit to be used by any person not authorized or this prohibits using a plate or permit to be used by any person not authorized to use it or in any vehicle other than the vehicle for which it was issued. So following up on Judge Carson's question, so he pulls up and sees that in Pennsylvania, there is nobody authorized to use this plate. Then why isn't there reasonable suspicion to say that, well, he is, even if theoretically there's nothing in Wyoming to prohibit it, it is prohibited in Pennsylvania. And at least for purposes of a Terry stop, there's reasonable suspicion that he's violating this Pennsylvania ordinance because he is at least reasonable suspicion to believe that he's using a plate that's not authorized to be used. First, I think just the no return doesn't create any suspicion that he's not authorized to use. I mean if it returned to another vehicle or something something more. But even if I see that point I think it's important to stress that is in violation of Pennsylvania law. All that does is mean he's not exempt from Wyoming law. So that means if essentially that yes be in violation of both. So, and the Wyoming statutes abundantly clear on that. So that if you agree that he's not in violation of Wyoming law, and the Pennsylvania violation is completely irrelevant. He still has to be in violation of Wyoming law, but I'm also not sure you even get to any analysis of Pennsylvania law, and that the Wyoming validly registered in another state. The officer says he was validly registered, and you have to be displaying your registration numbers or plates not and or plates in accordance with the laws of that state. And he was displaying his registration number on the temporary permit. So he's fully compliant with Wyoming law and what it requires of out of state drivers in Wyoming. I want to briefly touch on the government second argument which is reasonable mistake of law, and just point out that this is, it's a forfeited argument, and that it wasn't raised below. And it's also inadequately briefed and that the government has to shoulders the burden of proving a reasonable mistake of law. And at no point in his briefing does the government point to any law that would be subject to genuine ambiguity or hard interpretive work. So it can't be said that any mistake here was reasonable without any citation to what law could be reasonably mistook or misconstrued. And finally, as to the district courts rule 12 error. I think conclusive proof that there was a live controversy here that wasn't decided is the court's footnote. The court expressly recognizes the possibility of a false positive with with Maverick, and just says it doesn't need to resolve this factual dispute for erroneous legal reasons. Oh, you go ahead. I was just going to have that it did have to resolve it because it was critical to whether if you if you have a dog that's trained to alert on both legal and legal legal substances, whether that can form the basis for a probable cause determination. So the critical question is whether this dog is trained to alert on legal as well as illegal substances. The let me ask you about that. Let's say hypothetically that you have a canine that is trained to alert to beer that contains at least 12 percent alcohol. And in the testimony is that the canine and that that is what the canine is trained to alert on. And there is three point two percent beer in the vehicle and the dog alerts to that. Obviously, it didn't alert to beer containing 12 percent alcohol. If if isn't there if there's a finding that the that the canine is trained to alert to a to beer containing 12 percent alcohol, isn't that the necessary finding? In other words, even if hemp contains some minuscule amount of THC, that's not what the judge found. You know, put aside the footnote and I'll ask you about the footnote in a second. But the judge found that the canine was alerted to try to alert to four drugs, one of which is marijuana. And so if if a canine is trained to alert to marijuana, by definition, that dog is not going to be trained to alert to hemp because hemp, as the officer answered in responding to cross examination, contains only a minuscule amount of THC. The judge did make the finding, I would ask you, didn't he? Because the judge found that the dog was trained to alert to marijuana, not hemp or hash, you know, something that contained a much, much smaller density of THC. To unpack that a bit, I think you can't isolate the footnote, because if the court had said the dog alerted on these four illegal substances, we probably wouldn't have an issue on appeal. It's the footnote that says he couldn't the officer couldn't actually identify the unique chemical signature in marijuana that this dog alerts to. So if it is THC, that's a component that exists in hemp, so it could have existed on hemp. The court expressly recognizes the potential for a false positive, meaning that the dog's trained to alert on legal substances. And whether that's true, that factual finding is necessary to determine whether this dog could look at the drug dogs in Colorado that they had to retire once marijuana became legal. And they were trained to alert on marijuana and cocaine and other substances. So you have to consider what the dog's trained to alert on, and the court recognizes that it could be THC. Without that footnote, you would lose that argument, right? Yes, and I'd like to save the rest of my time for rebuttal if that's possible. Well, consider it saved. I'm going to ask you another follow-up question, but I'm not going to prejudice you on your rebuttal time. Aren't there two ways of reading that footnote? One is to address maybe a potential argument that could be made, and that is that the dog wasn't sufficiently reliable because the dog did a positive alert and there was no marijuana in the car. Then the judge gives an explanation that, well, the guy was smoking marijuana earlier today, and that's why he alerted. So, I mean, that interpretation or that part of the footnote really I don't think has anything to do with your Real 12 argument. And then the second argument is what you alluded to, is that, well, the handler was not qualified to tell which component of marijuana the dog would hit on. But all that means is that this is just a guy that handles the dog. He didn't know the people that trained the dog of whether or not – of what components – I mean, I don't know all the components that go into marijuana. Obviously, THC is one, but if this person was the only one that could have possibly be qualified to opine on the actual training of that dog, I could see your argument. But all this guy was saying is, I don't know. You're getting into something that I don't know how they trained this dog. All I know is this dog is qualified to alert to marijuana. And if it's hemp, then the dog's not going to alert. You know why? I don't know. And it seems to me that that potential interpretation of that footnote would undermine your implication that the judge failed to make an adequate Rule 12 finding. Two responses. The first is, I think, the recognition of the possible false positive undermines that interpretation. I mean, the court wouldn't be saying that if your interpretation was correct. And I think, second, I don't think it's our burden because we're not challenging the reliability of this dog here. Sure, it's properly trained, but is it trained to alert to legal substances? And it's always the government's burden to prove that it has probable cause. And so if the government needed to put someone on to in face of this objection to detail how these dogs are trained or what chemical signature they're they're hitting on, then that's what the government would have to prove. OK, thank you. I'm sorry to you and my colleagues for eating up so much of your time. I am going to give you a total of one minute for a bottle because I did that. Judge Bell, do you have any questions? No. All right. Judge Carson, do you know? Thank you. All right. We'll hear from Mr. Forward. You're on mute. You're on mute. So he is actually called in because he was having some audio issues where he couldn't hear. So I think as long as he unmutes the phone, we should be able to hear him. OK, but let's see. Is Mr. Forward able to hear us? Yes. OK, Mr. Forward, were you I want to make sure you were able to hear Mr. Smith. Were you able to hear everything that Mr. Smith said? Yes, I think I just got a message from Zoom. Can you hear everything I'm saying now? I can hear you great now. Yes. All right. Technology works. But were you able to hear? We're not going to start your time yet. Were you able to hear everything that Mr. Smith said? Yes. OK, good. Good morning. My name is TJ Forward. I am an assistant United States attorney in the district of Wyoming, and I am arguing on behalf of the United States in this matter. When Officer Freeman initiated the traffic stop, he had reasonable suspicion to suspect that there was criminal activity occurring, that the car was not properly registered. This testimony was presented at the suppression hearing and is well reflected in Judge Johnson's order. Specifically on page seven of his order, page ninety one of the record, it states the Luca violated this statute referring to thirty one four dash one oh one. Luca violated this statute by operating a vehicle displaying a temporary permit, including a vehicle transfer, as well as a license plate, which under Wyoming law must be immediately removed upon transfer. Judge Johnson before that cites two other possible statutes that the defendant violated. Thirty one two dash two oh one thirty one dash two dash two fourteen. The appellant in this case argues that the United States has abandoned our arguments in that case and abandoned Judge Johnson's findings. That is simply not the case at all. The United States stands by in its brief that Mr. Luca was driving with an invalid registration just as the court found. And as you, Judge Bacarach, referred to earlier, that's exactly what this is hitting on. He was driving a vehicle that had an expired license plate. When Officer Freeman was behind him, he ran the information of that license plate through the end car computer system. And it showed that the license plate was not currently registered to any vehicle out of Pennsylvania. Not just some other vehicle or that registration. How do you deal with Mr. Smith's argument that the provision about driving with an improper registration really doesn't use the word license? It uses registration permit decal, but not license plate. That was a very interesting point he brought up when he said that. But as you look at that entire statute as a whole, and I want to make sure I'm looking at the right provision here. Under 314101, it begins by saying, no person shall knowingly operate nor shall an owner knowingly permit to be operated upon any vehicle unless a valid certificate of title, registration, and license plates or temporary permits have been issued for the vehicle, except as otherwise provided by this act. He's correct. It talks about registration separately from license. But that entire statute talks about having both a valid license, a license plate, and registration. Or sorry, the title, registration, and license plates. I'm a little troubled by this. I mean, I didn't focus on that language until you just read it. But does it say that the license has to be displayed, or does it just say unless it has a valid license has been issued? I'll continue, Your Honor. The next subsection from there says unless valid license plates or permits issued for the vehicle are displayed on the vehicle as provided by this act or as otherwise provided by this act. And the next provision, which is incredibly important for all of this, Your Honor. With license plates, validation stickers, or license permits altered, mutilated, or obscured so as to prevent the license plate number from being easily read. License plates and permits, the temporary permits, the temporary tags, temporary registration, the different ways that I'm referring to it. Importantly there in 31-4-101A3 states that they must be easily read. And the record, Your Honor. There are times that Mr. Smith states what the record says. He says it expressly states this. But it's not in quotation. It's his summary of it. We have to look at what was exactly said in the testimony. And looking here on page 20 of the transcript, it says, could you see any numbering or lettering or anything like that on the temporary permit? He starts off by saying, yes, I could. But then Mr. Healy asks, what did you see? I could see there was numbering on it. I could not read what it said. The temporary permit was not easily readable. He was driving around with a license plate that was expired. And here's one of the things, too, about this as well is that if you have a temporary permit that says it's valid, that's one thing. I mean, you've got that. That's great. But you're still driving around with a license plate that is invalid, that is not properly registered. That is against the law. That is what it says. There is not an exception of you can drive around with an expired plate if you have a temporary one. In fact, Mr. Healy makes note, Judge Johnson did not make this finding in his record. But Mr. Healy made note of, and I want to find the exact statute. I apologize, Your Honor. But part of the Wyoming statute states that there should be only one license plate on the rear of the vehicle. Only one. Not two, one. And that's what we have here. We have an in, we have a license plate that is not registered to any car, and a permit that cannot be easily read. And as this has happened, as we filed this brief, I did not argue this case. Mr. Healy did. Since I've worked on this and I've been on the streets, Colorado has temporary permits that are incredibly readable. They look like a license plate. I've noticed that. Wyoming has ones that go in the back of the window. But they're all easily readable as it requires. But the other part is I have not seen vehicles with a license plate and a temporary tag. I just have not seen that. And there's a reason. It's because the statute, as we talked about the seller's obligation, the intent of all this is to have only one license plate, one permit on the vehicle so officers know what is happening. And I think one of the large reasons for this is, as I forget which of your honors brought this point up earlier, there are a lot of individuals that drive around with manufactured permits, ones they might have made up themselves. And there's no, as stated in the record, there's no way to run those permits. The officers don't have a way to see. They can just look and see if it's valid or not. Or they don't have a way to see if it is valid or not. I apologize. I misspoke there. They can just see those temporary permits. But when they see a temporary and an expired one, that in itself is reasonable suspicion. There is reasonable suspicion of criminal activity because that is atypical. It is unusual. Absolutely. And that's a point that Mr. Smith points out, that unusual does not necessarily always mean that it's going to be reasonable suspicion. But in these circumstances, with a temporary permit that you can't read and another license plate, that's reasonable suspicion in its own, regardless of what the other statutes say. But the statutes are on point regarding this. You cannot drive around with an expired registration and you cannot drive around with a permit, a temporary, that cannot be read. Mr. DeLuca, just both. Yeah. So, well, let me ask you this, because Mr. Smith, one of the arguments that he makes in his briefing is, okay, there is reason for a Terry stop. But you can't prolong, you know, we know under Rodriguez, you can't prolong the traffic stop beyond the time necessary to accomplish the mission. So if that's the reason for the stop, the officer stops him, goes up, looks at the temporary tag. Now he can read it, sees it's in Pennsylvania, mission for the traffic stop accomplished. Rodriguez requires him to get back in his car and move along. What's wrong with that? So the problem with that, Your Honor, is that you still have the issue of the two plates, which I think in itself creates reasonable suspicion. The second part is you have the license plate with the registration that does not come back to any vehicle. I might say expired sometimes during this, just because that's how I think of it. But that license plate did not come to any vehicle whatsoever. So then what the officer did is he could have looked at that temporary plate and said, oh, there it is. And if it had just been the temporary plate, he couldn't see it. He goes up there, can read it. I think that I might be in a lot of trouble trying to make this argument. But that's not the case here. We have additional facts that lay to that reasonable suspicion. And the officer then goes and asks him for his registration. And he did not have any registration for the car. He did not have a driver's license. There was no valid registration for the car. Now, that's an afterwards part, and I will concede that that's not necessarily part of the stop. But it just shows that there wasn't valid registration. And one thing I tried to look at here, and it's a point that Mr. Smith tries to make in his brief rather often, is that there is a section, I believe, on page 37, actually, at the very, very top. The defense counselor in cross-examination states, but in fact, the car was registered with that temporary permit. And the officer answers, correct. If you read that entirety of the questioning in the direct, in the cross-examination, that section reads that there was a temporary permit there. There is nothing in the record that shows if that car was actually registered. Again, this is not my case initially. In all candor to the court, I wanted to find out if we did find out if the car was actually registered to him or someone else or there was something to it. I did not see that in any of the reports. But that then goes to the point of where, as Mr. Smith tried to state in here, is that the car is properly registered. There is no evidence showing it. There is no evidence showing that the temporary permit was actually valid. And what we see throughout that constant cross-examination is that the plates came back. They didn't come back to anyone. I'm not sure I'm following you, Mr. Foreman, because on the page that you're referring to, I think the page you're referring to, page 37, Officer Freeman's asked, but in fact the car was registered with that temporary permit. Answer, correct. So you never issued a citation for not having the car registered. Answer, that is correct. So it does look like Officer Freeman at least acknowledged that the temporary permit was valid. And honestly, Your Honor, the thing I would just say for this is that it's not clear. And Judge Johnson at one point begins to ask about it on page 38, which he states, I don't know if I have it highlighted here or not. He states that the temporary tag had identification information and the expiration date. And the witness said, I believe so, yes. I very much wish that the United States would have asked what those dates were, what the temporary permit said. We don't have that in the record. And that's what I'm trying to get at. It's not clear, Your Honor. If I may move to the second argument of this regarding the canine, the issue is whether or not the court made Rule 12 essential findings in fact. We can't turn it to other issues about whether the dog is properly trained. That's the burden on the United States. The question is, did the court make sufficient findings? And what we see there is that it's not that the findings have to be what lengthy, show every single thing. It's just, is there enough? And there clearly is enough. A lot of emphasis is placed on footnote four. But as I believe it was you, Judge Bachrach, were stating, is that there are a lot of findings in here regarding the canine, that he was properly trained. He was trained the year prior. He had certification then. He was certified afterwards. He's trained to alert on four different substances, four illegal substances. Colorado, marijuana is legalized. Wyoming is not Colorado. That's just the same thing of where if an officer in Wyoming smells marijuana, that's probably what caused the search. If he does in Colorado, I don't believe it is. What if he was trained to, the canine was trained to alert to, I'm going to change your hypothetical from your brief a little bit, trained to detect heroin, cocaine, or hemp, or Tylenol. Some substances that are prohibited under the Controlled Substances Act, some that are not. Is there probable cause for a positive alert or a reasonable suspicion based on a positive alert? I'm going to try to give a cop-out answer here a little bit at first. First, I'll say that one of the strong arguments, I think, for the United States is that we're not posing hypotheticals in ours. We are relying on the facts. Mr. Smith, in his brief, is posing many hypotheticals, trying to look at this in rosy glasses about why the car might be registered, what the dog could have alerted to. What we're looking at here is the facts. Now, in this situation of the hypothetical of a dog that was trained to alert to Tylenol, I would hope that we would never, ever use a dog that was alerted to Tylenol. I personally would not want to take that particular one to a suppression hearing because I don't think that probably would give you – okay, I'm not doing the cop-out answer. I'm giving an answer. I would not want to take that to a suppression hearing. I think if a dog was trained to alert on legal substances, there's no way to differentiate. Now, hemp and marijuana are different because I actually just filed a brief last week regarding the possibility that it might be hemp. The fact is that hemp is legal if it has less than 0.2% THC, which is such a minuscule amount. And the Tennessee cases we cited to showed the odor of marijuana, even though hemp might be legal in Tennessee, the odor of marijuana is still enough to justify a probable cause. And I believe – I don't remember 100%, but I believe that's the officer's smell. That's not even the dog's smell. That's the officer's smell. Here we're relying upon a dog who is incredibly reliable. With that, we'll address upon our – I can understand you're not wanting to go to the hypotheticals. I was just intrigued by one, but I'm understanding it's not the core of your argument. But the argument being that, okay, the dog was trained to alert onto five substances, four of which are illegal and one of which is legal. You get an alert. There's a 20% chance of a false alert, but that's good enough to establish a reasonable suspicion to continue with the Terry Stop. What percentage of accuracy do you need? We know that officers do Terry Stops all the time with less than 100% accuracy. Why are we requiring 100% accuracy for the dog? I think that's an incredibly fair point, Your Honor, which we do address very briefly in our argument as well, is that the smell test does not have to be 100%. We do not have to prove it beyond a reasonable doubt at this point in time, let alone 100%. It just needs to provide probable cause that it is there. And as you stated, is that – if we were to take a situation in which a dog will alert to 80% of substances that are illegal, then percentage-wise, I think that is a very fair argument that could be made, because more likely than not, you might find it. Yeah, I understand you don't want this opinion to turn on that, nor am I very eager for it to turn on it either, but I was just interested in the argument. Me personally, I would be hesitant with that just because I want a dog that's only going to alert on illegal substances. Now, marijuana where the scent could go for illegal and non-legal ones, like let's say that the testimony was this dog alerts to hemp and marijuana. I feel confident going with that because more likely than not in this situation, there's going to be probable cause that – that establishes probable cause that it would be. If the testimony was that it was both of those, that gives probable cause. Okay. Thank you very much. Yeah. Judge Carson, do you have any questions? I don't. Thank you. Okay. Thank you, Mr. Forwood. I'm sorry, Mr. Grant. I'm Mr. Grant, Mr. Speer. Sorry. You have one minute. Volume 1 in 87 is the court's findings of facts, and it expressly states that the officer couldn't see the state of origination on the temporary permit. That's the fact that the court found, and that's what governs this appeal. So the government seemed to point to three statutes that Mr. DeLuca might have been violating. The first one, 314101A1, first time on appeal it's mentioned that. And it didn't read the whole thing. It says you can't operate a vehicle unless a valid certificate of title, license plates, or temporary permits have been issued for the vehicle. He had temporary permits. He was fully in compliance with the statute. The government also referenced the district court briefing where they cited 312205 and said that it requires only one license plate. That's not what the statute says. It says license plates shall be in that list. One shall be on the front and one on the back. It doesn't say only one. And it's also referring to license plates, not temporary permits. So with that, we would respectfully request that this court reverse and remand for further proceedings. All right. Thank you, Mr. Smith. Judge Bell, or Judge Carson, do you gentlemen have any questions? No. No. Okay. Thank you. This matter will be submitted. I do have an editorial comment. I thought the briefing and the arguments today were just top notch. So we really appreciate your hard work. I guess I would add to that that I thought that the rebuttals from both of you, one is an answer response and one is a rebuttal, were very well done. A lot of times those are wasted or particularly the rebuttal by the appellant is wasted or just repetitious. And I think if I were teaching young lawyers, it would be some lessons about how to do rebuttals. And I thought you had a very effective rebuttal. I totally agree.